**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DANIEL FLORIO and KAY FLORIO,**

**Plaintiffs,**

**-vs-** **Case No. 6:07-cv-1700-Orl-28KRS**

**MANITEX SKYCRANE, LLC, and PHOENIX CORPORATION,**

**Defendants.**

---

# ORDER

Plaintiffs, Daniel Florio and Kay Florio, bring this product liability action against Defendants, Manitex Skycrane, LLC ("Manitex"), and Phoenix Corporation ("Phoenix"). The Court has jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds the $75,000 threshold.

The case is now before the Court on the Motion for Summary Judgment (Doc. 82) filed by Manitex and the Motion for Summary Judgment (Doc. 79) filed by Plaintiffs. Having considered the submissions of the parties and pertinent law, the Court concludes that Manitex's motion must be granted and Plaintiffs' motion must be denied.

## I. Background

On October 28, 2005, Plaintiff Daniel Florio ("Florio") was severely injured when one of the cables on the truck-mounted, fifty-five-foot telescoping aerial extension ladder on which he was standing broke. The ladder suddenly retracted while Florio's right arm was extended through its rungs, resulting in the arm being amputated.

On the day of the accident, Florio was hanging a sign at a hotel as part of his work. Before the accident occurred, he had gone up on the ladder three or four times that day without incident. (Florio Dep. at 73). He remembers nothing about the incident except hearing a loud "bang."[1] (Id. at 79). Florio was in the hospital for three months.

The ladder at issue, a Sponco IH-55 Aerial Ladder, was designed, manufactured, and sold by Defendant Phoenix and had been purchased directly from Phoenix in June 2000 by Fairway Signs, Inc., a company that Florio had started in Daytona Beach, Florida in 1982 and of which he was president. (Id. at 24, 91; Joint Final Pretrial Statement at 9; Invoice, Ex. A to Florio Aff.). Although Florio later sold Fairway Signs, he took the ladder with him as part of the deal. (Florio Dep. at 23, 92; see also Joint Final Pretrial Statement at 9 (stating that Florio purchased the ladder from Fairway Signs in March 2004)).

In July 2003, Phoenix entered into an Asset Purchase Agreement ("APA") with Manitex. (APA, Attach. 1 to Doc. 82). Pursuant to the agreement, Phoenix sold substantially all of its assets to Manitex in exchange for cash and assumption of certain Phoenix liabilities. (Id. at 2-4). Manitex continued operations in Phoenix's former building in Ottawa, Kansas from mid-July 2003 until February 2004. (Sader Dep. at 28; Rolston Dep. at 30). After the APA was executed, Harold Sader, Phoenix's president, had an agreement with Manitex to be compensated for six months and to "be available to" Manitex; however, about halfway through that six months, Sader was told not to come into the office any more, though he continued to be compensated. (Sader Dep. at 28). At the end of February 2004, the

[1] Florio's next memory was of being on the medical transport helicopter. (Florio Dep. at 79-80).

operation was transferred to the Manitex facility in Georgetown, Texas.  (Sader Dep. at 41; Rolston Dep. at 30).

Florio and his wife filed this suit in October 2007, naming Phoenix and Manitex as Defendants.  In their Complaint (Doc. 1), Plaintiffs assert seven counts:  strict liability of Manitex (Count I); negligence of Manitex (Count II); strict liability of Manitex (Count III); negligence of Manitex (Count IV); strict liability of Phoenix (Count V); negligence of Phoenix (Count VI); and loss of consortium (Count VII).

Phoenix, which is no longer operating, did not make an appearance in the case, and a default was entered against Phoenix on February 6, 2008.  (See Docs. 21 & 22).  Plaintiffs requested an extension of time to seek entry of judgment against Phoenix (Doc. 28), and Plaintiffs have been granted until twenty days after resolution of their claims against Manitex to file a motion for default judgment against Phoenix, (Doc. 29).  Now before the Court are Manitex's motion for summary judgment (Doc. 79) and Plaintiffs' motion for summary judgment as to three of Manitex's affirmative defenses (Doc. 82).

## II.  Discussion

### A.  Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  In ruling on a motion for

---

[2]   Effective December 1, 2010, the United States Supreme Court adopted amendments to the Federal Rules of Civil Procedure.  Although the revision changed the language and designation of subsections in Rule 56, the standard for granting summary judgment remains unchanged.  See Fed. R. Civ. P. 56 advisory committee's note.

summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.'  Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Sawyer v. Sw. Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

B.  The Merits of the Parties' Motions

1.  Manitex's Motion (Doc. 82)

The parties agree that Manitex did not design, test, manufacture, or sell the allegedly

defective ladder. Plaintiffs instead claim that Manitex is liable as Phoenix's successor for damages caused by the allegedly defective ladder and also that Manitex failed in its independent duty to warn Plaintiffs of the defective product.

In its motion for summary judgment, Manitex argues that it is not responsible for the liabilities of Phoenix, including the product liability claim involved in this suit. Initially, Manitex asserts that under the language of the Asset Purchase Agreement, Manitex agreed to assume very few, specific liabilities and expressly declined to assume the rest of Phoenix's liabilities, including claims liability for products made and sold by Phoenix. Manitex also argues that under the successor liability law of Florida, it is not responsible for Phoenix's liabilities because the asset purchase did not result in a "de facto merger" of Phoenix and Manitex. Further, with regard to Counts III and IV, Manitex asserts that it did not owe Florio a duty to warn of an unknown defect. Plaintiffs dispute each of these assertions, which are addressed in turn.

a. Counts I and II

In Counts I and II of the Complaint, Plaintiffs assert claims of strict liability (Count I) and negligence (Count II) against Manitex based on its alleged status as the corporate successor to Phoenix. In other words, these two counts focus on Phoenix's actions in designing, manufacturing, and selling the ladder, as well as in failing to warn consumers of the dangers of it, but Plaintiffs seek to hold Manitex responsible for Phoenix's actions based on an exception to the traditional rule of corporate successor liability law as adopted in

Florida.[3]

The general rule is that a successor corporation is not responsible for the torts of a predecessor entity.  The Supreme Court of Florida has recognized this general rule of successor nonliability, subject to four exceptions.  See Bernard v. Kee Mfg. Co., 409 So. 2d 1047, 1049 (Fla. 1982).  Thus, in Florida:

> obligations and liabilities of a predecessor corporation are not imposed upon the successor company unless: (1) the successor expressly or impliedly assumes the obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.

Redman v. Cobb Int'l, Inc., 23 F. Supp. 2d 1372, 1375 (M.D. Fla. 1998) (citing Bernard, 409 So. 2d at 1049).

In Bernard, the plaintiff brought an action against Kee Manufacturing ("Kee"), for injuries related to an allegedly defective lawnmower purchased from Kee's predecessor. Kee had purchased all the assets of its predecessor including its manufacturing plant, inventory, goodwill, and the right to use the company name.  The asset sale was a cash transaction and the previous owner acquired no ownership interest in the successor corporation.  By the terms of the acquisition, Kee assumed no liabilities of the predecessor. Kee kept all of the former employees, continued to manufacture lawnmowers, and provided replacement parts for the lawnmower at issue, though it discontinued manufacturing that model.  Kee's brochures stated that it had been manufacturing lawnmowers since 1948.

---

[3] In contrast, Counts III and IV of the Complaint are based on Manitex's own conduct after it entered into the Asset Purchase Agreement with Phoenix, not on Phoenix's actions.

"The entire manufacturing process was effectively continued, but under a new owner and new management." 409 So. 2d at 1048.

The Supreme Court of Florida declined to hold Kee liable for the defective lawnmower manufactured and sold by its predecessor. The Bernard court adhered to the traditional corporate law rule followed by, in its words, "[t]he vast majority of jurisdictions," that does not impose liability absent one of the four exceptions noted above. Id. at 1049. In doing so, the court declined to join courts in other jurisdictions that had expanded successor corporate liability by adopting the "product line" and "continuity of enterprise" exceptions. See id. Explaining its adherence to the traditional rule, the Bernard court stated:

> Extending liability to the corporate successor is not consistent with at least one major premise of strict liability, which is to place responsibility for a defective product on the manufacturer who placed that product into commerce. The corporate successor has not created the risk[] and only remotely benefits from the product. The successor has not invited usage of the product or implied its safety. Since the successor was never in a position to eliminate the risk, a major purpose of strict liability in modifying a manufacturer's behavior is also lost.

Id. at 1050.

Plaintiffs in this case acknowledge the Bernard rule but argue that one of its exceptions, the "de facto merger" exception,[4] applies here and renders Manitex liable for the

[4] Plaintiffs do not assert that any of the other three exceptions to the general rule—assumption of obligations, mere continuation, or fraud—has been satisfied. First, Plaintiffs do not argue that Manitex assumed the liabilities of Phoenix in the Asset Purchase Agreement. In the Joint Final Pretrial Statement, the parties have stipulated that "[t]he purchase price of the Asset Purchase Agreement between Phoenix Corporation and Manitex Skycrane, LLC did not include Manitex's assumption of any products liability of Phoenix Corporation." (Doc. 60 at 9). Second, although Plaintiffs did allege in the Complaint that Manitex is "merely a continuation" of Phoenix, (Doc. 1 ¶ 6), Plaintiffs are no longer pursuing

acts of Phoenix. "A de facto merger occurs where one corporation is absorbed by another without formal compliance with the statutory requirements for a merger." Amjad Munim, M.D., P.A. v. Azar, M.D., 648 So. 2d 145, 153 (Fla. 4th DCA 1994). Thus, a transaction that is not literally a merger, but which is the functional equivalent, is treated as if it were a merger for purposes of determining successor liability. In a sale of assets transaction, the contract determines which of the liabilities will be assumed by the buying corporation; however, if a de facto merger is found, the surviving corporation is liable on all of the debts and liabilities of the merged corporation. See 15 W. Fletcher Cyclopedia of the Law of Private Corporations § 7122 (2010).

To find a de facto merger, "there must be continuity of the selling corporation evidenced by the same management, personnel, assets and physical location; a continuity of the stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and assumption of the liabilities." Amjad Munim, 648 So. 2d at 153-54 (citing Arnold Graphics Indus. v. Indep. Agent Ctr., 775 F.2d 38, 42 (2d Cir.1985), and Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F. Supp. 834, 838 (S.D.N.Y.1977)); see also Viking Acoustical Corp. v. Monco Sales, 767 So. 2d 632 (Fla. 5th DCA 2000) (de facto merger doctrine does not apply to transferee corporation that bought most of the assets of the transferor where there is no identity of officers, directors, or shareholders and location of business is no longer in Florida).

---

that position, (see Doc. 44 at 16 (acknowledging that the first, third, and fourth exceptions do not apply in this case but arguing that the de factor merger exception does apply)). Finally, Plaintiffs have set forth no allegations of fraud.

Plaintiffs argue that although the transaction between Phoenix and Manitex was structured as an asset purchase, the result was in substance a merger of the two companies.  The facts in this case, however, are almost identical to those in Bernard, which the Supreme Court of Florida found did not amount to a de facto merger.  As in Bernard, Manitex purchased all of Phoenix's assets, including inventory, equipment, goodwill, and the use of its trade name and trademarks.  For approximately six months after the asset sale, Manitex completed Phoenix's pending work orders, manufacturing the same product lines in the same location with the same employees.  Manitex, like Kee in Bernard, also provided replacement parts for its predecessor's products.  The only difference between the two cases appears to be that Manitex also agreed to assume certain liabilities.

Also like Bernard, the officers and directors of the business changed entirely after the asset sale.  Although Phoenix's president continued to go to the office for a few months following the asset sale, he had no real authority or control and was eventually told not to come into the office.  (Sader Dep. at 28).  Manitex ultimately hired two Phoenix employees—a sales manager and a service representative.  (Id. at 37).  Neither of these employees was an officer or director.

Another significant fact that this case shares with Bernard is that the predecessor's shareholders never acquired any shares in the successor corporation.  See Bernard v. Kee Mfg. Co., 394 So. 2d 552, 555 (Fla. 2d DCA), approved, 409 So. 2d 1047 (Fla. 1982) ("[T]he transaction could not be considered a de facto[] merger because Mr. Kee obtained no stock in Kee Manufacturing Company, Inc., for the sale of his assets.").  There is no evidence in the record that Phoenix's owners received shares of Manitex as consideration for the sale.

Instead, Manitex paid Phoenix's owners a cash purchase price and agreed to assume certain liabilities, leaving Phoenix's owners with no interest in Manitex. (See Attach. 1 to Doc. 82 at 3-4). Therefore, there was no common identity of ownership between the two companies.

In applying the de facto merger doctrine, Florida courts have uniformly required a finding of substantial continuity of ownership. Compare Bernard, 409 So. 2d at 1049 (declining to "delet[e] a historical requirement of substantial identity of ownership"), and Viking Acoustical, 767 So. 2d at 636 (de facto merger did not occur when there was no identity of officers, directors, or shareholders), with Kelly v. Am. Precision Indus., 438 So. 2d 29 (Fla. 5th DCA 1983) (successor corporation was responsible for liability of predecessor corporation in delivering allegedly defective garbage truck where successor purchased all of predecessor's stock and stripped it of all its assets, with the benefit thereof going solely to successor), and Lab. Corp. of Am. v. Prof'l Recovery Network, 813 So. 2d 266, 269-70 (Fla. 5th DCA 2002) (fact questions remained as to whether a de facto merger occurred where the owner was the sole officer and shareholder in both corporations). Although a minority of jurisdictions have expanded corporate successor liability by adopting the "continuity of enterprise" exception, which eliminates the necessity of proving a common identity of officers, directors, and shareholders, see, e.g., Turner v. Bituminous Cas. Co., 244 N.W.2d 873 (Mich. 1976), Florida has not done so.

Although Manitex acquired all of the assets and some of the liabilities of Phoenix and continued manufacturing Phoenix products for a period of time, there is no evidence in the record that supports a finding of continuity of officers, directors, and ownership between the

companies. Without these elements, this Court cannot find that a de facto merger occurred. Accordingly, Manitex is entitled to summary judgment on Plaintiffs' claims alleging liability based on the de facto merger doctrine.

b. Counts III and IV

In Counts III and IV of the Complaint, Plaintiffs seek to hold Manitex responsible for its own conduct rather than that of its predecessor. In Count III, Plaintiffs assert that Manitex is strictly liable for failure to warn consumers, including Florio, of the defective condition of the Sponco Aerial Ladder. In Count IV, Plaintiffs allege that Manitex was negligent in not warning consumers, including Florio, of the defective condition of the Sponco Aerial Ladder.

Plaintiffs' arguments in support of both Counts III and IV are based on section 13 of the Restatement (Third) of Torts: Products Liability, which subjects a successor corporation to liability for harm caused by a post-sale failure to warn. Under section 13, a continuing relationship between the successor corporation and pre-transfer customers of its predecessor may create a duty to warn even if no de facto merger has occurred. Jerry J. Phillips, Product Line Continuity and Successor Corporation Liability, 58 N.Y.U. L. Rev. 906, 926 (1983); see also Restatement (Third) of Torts: Products Liability § 13 cmt. a (1998). However, Plaintiffs cite no authority that supports application of section 13 in Florida.

With respect to their strict liability claim, Plaintiffs simply state that "evidence reveals that Manitex did not adequately warn under the Restatement test." (Doc. 85 at 15). As to their negligence claim, Plaintiffs argue that "the fact that Manitex is a successor to Phoenix does not alter Manitex's duty to warn" because "the cause of action for negligent failure to warn (Count IV), applying 'what a reasonable manufacturer would have known and warned

about' is the identical standard for the Restatement (Third) of Torts: Products Liability test regarding a successor company's liability for failure to warn . . . ." Id. at 4.  Thus, both Plaintiffs' strict liability and negligence claims are derived from the standard set forth in section 13.  Additionally, Plaintiffs cite two cases, Redman v. Cobb Int'l, Inc., 23 F. Supp. 2d 1372 (M.D. Fla. 1998)  and Ferayorni v. Hyundai Motor Co., 711 So. 2d 1167 (Fla. 4th DCA 1998), which they argue set forth the standard for both strict liability and negligent failure to warn.

In Redman, the court discussed the distinction between strict liability and negligent failure to warn in the context of traditional successor liability.  23 F. Supp. 2d at 1375 n.2. However, the court concluded that liability for failure to warn is not imposed on a successor corporation "unless the plaintiff can prove one of the exceptions set forth in Bernard." Id. at 1375.  Although the Redman decision is relevant to Plaintiffs' claims based on the de facto merger doctrine, it is not relevant to Counts III and IV.  Likewise, this Court finds the decision in Ferayorni inapposite.  In Ferayorni, the plaintiff brought a wrongful death action against the manufacturer of an allegedly defective product. 711 So. 2d at 1169.  The Ferayorni court dealt only with the direct liability of a manufacturer and did not create or even discuss a successor corporation's duty to warn of defects in products manufactured and sold by a predecessor.

Although several Florida cases discuss the post-sale duty to warn, this Court has found no case that imposes an independent duty to warn on a successor corporation for defective products designed, manufactured, tested, and sold by the predecessor.  In fact, at least two Florida courts have refused to apply the Restatement (Third) of Torts.  See

Force v. Ford Motor Co., 879 So. 2d 103, 107 (Fla. 5th DCA 2004) ("Nevertheless, the Restatement (Third) position has not been adopted by any appellate court in Florida."); Liggett Group, Inc. v. Davis, 973 So. 2d 467, 473 (Fla. 4th DCA 2007) ("[T]he [Restatement (Third) of Torts] has not yet been adopted in Florida."), review dismissed, 997 So. 2d 400 (Fla. 2008).  Because the restatement test in section 13 has not yet been adopted into Florida law, this Court cannot find liability based on this section.

Plaintiffs set forth no other authority, and this Court can find no alternative basis in Florida law, to hold a successor corporation liable for failure to warn of defects in products placed on the market by its predecessor.  Plaintiffs contend that Manitex's status as a successor corporation "does not alter [its] duty to warn Phoenix purchasers." (Doc. 85 at 4). Although technically correct, Plaintiffs' argument ignores the fact that Manitex never had a duty to warn Phoenix purchasers.  Florida law imposes a post-sale duty to warn customers of a product's dangerous propensities on those who have control over the manufacture or distribution of the product—those who are in a position to take any safety measures.  See West v. Caterpillar Tractor Co., 336 So. 2d 80, 86 (Fla. 1976).  Florida courts, however, have not extended this duty to a corporate successor who did not "create[] the risk," or "invite[] usage of the product or impl[y] its safety." Bernard, 409 So. 2d at 1050.  Plaintiffs here have confused the standard for manufacturer's liability with that of corporate successor liability.

The duty to warn that Plaintiffs seek to impose on Manitex has not been extended to corporate successors in Florida.  Therefore, as a matter of law, Plaintiffs cannot recover either in strict liability or in negligence for the alleged breach of this duty by Manitex.  In light of the foregoing, Manitex is entitled to summary judgment on Plaintiffs' claims alleging failure

to warn.

2. Plaintiffs' Motion (Doc. 79)

In their motion, Plaintiffs seek summary judgment on three of Manitex's affirmative defenses—those numbered 1, 8, and 10 in Manitex's Answer (Doc. 18). Because Manitex is entitled to summary judgment, the Court need not reach the Plaintiffs' motion for summary judgment on Manitex's affirmative defenses.

III. Conclusion

In concluding that there is no basis for finding Manitex liable for Florio's injuries, the Court recognizes that this decision leaves Plaintiffs without a remedy. While this outcome is unfortunate because it appears that Florio may have suffered an extraordinary injury due to a defectively designed or manufactured product through no fault of his own, the state of the law in Florida, as it currently stands, prevents a different result. To hold otherwise would require an expansion of successor liability, and such an expansion should not be undertaken by a federal district court exercising diversity jurisdiction.

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Summary Judgment (Doc. 82) filed by Defendant Manitex Skycrane, LLC, is **GRANTED**.

2. The Motion for Summary Judgment (Doc. 79) filed by Plaintiffs is **DENIED as moot**.

3. The motions in limine (Docs. 81 & 83) and the Joint Status Request (Doc. 92) are **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida this 10th day of December, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party